RAJIV DHARNIDHARKA (Cal. Bar No. 234756)
rajiv.dharnidharka@dlapiper.com
LUPE R. LAGUNA (Cal Bar No. 307156)
lupe.laguna@us.dlapiper.com
**DLA PIPER LLP (US)**
2000 University Avenue
East Palo Alto, California 94303-2214
Tel:    650.833.2000
Fax:    650.833.2001

Attorneys for Petitioner
GVA Capital Ltd.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: MOTION TO COMPEL COMPLIANCE WITH A SUBPOENA AD TESTIFICANDUM<br><br>GVA CAPITAL LTD.,<br><br>                   Petitioner. | Misc. No.<br><br>**GVA CAPITAL LTD.'S NOTICE OF MOTION AND MOTION TO COMPEL; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:  June 21, 2023<br>Time: 10:00 a.m. |

## NOTICE OF MOTION AND MOTION TO COMPEL

Petitioner GVA Capital Ltd. ("GVA Capital") respectfully moves this Court for entry of an order under Rules 37 and 45 of the Federal Rules of Civil Procedure compelling Pavel Cherkashin to produce documents and sit for a deposition in accordance with subpoenas served on Mr. Cherkashin in a case pending in the United States District Court for District of Delaware, *Definition Services Inc., v. GVA Capital Ltd.*, Case No. 1:21-cv-00741-MN-JLH (the "Delaware action").  In accordance with N.D. Cal. Civil Local Rule 7-2(a), GVA Capital notices this motion for June 21, 2023 at 10:00 AM PT.  To the extent the assigned Judge wishes to have the motion heard on another date, GVA Capital will endeavor to provide notice to Mr. Cherkashin, whom GVA Capital currently understands is *pro per*.  The grounds for this Motion are set forth in the Memorandum of Points and Authorities below; the accompanying Declaration of Rajiv Dharnidharka ("RD Decl."); and the accompanying Proposed Order.

Dated:  May 3, 2023

DLA PIPER LLP (US)

By:  */s/ Rajiv Dharnidharka*

Rajiv Dharnidharka
Attorneys for Petitioner
GVA Capital Ltd.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Petitioner GVA Capital Ltd. ("GVA Capital") seeks non-party Pavel Cherkashin's compliance with discovery regarding a business dispute pending in the United States District Court for District of Delaware, *Definition Services Inc., v. GVA Capital Ltd.*, Case No. 1:21-cv-00741-MN-JLH (the "Delaware action").

The Delaware Action is a dispute between GVA Capital, an investment manager, and Definition Services Inc. ("Definition"), the successor-in-interest to one of GVA Capital's investors. Specifically, the dispute is over the distribution of proceeds from the sale of shares held by GVA Auto, LLC ("GVA Auto"), a subsidiary of GVA Capital.  Mr. Cherkashin is the former compliance officer of GVA Capital and has direct knowledge of the issues in dispute.  Furthermore, after he was terminated from the board of GVA Capital, Mr. Cherkashin used his credentials to terminate GVA Capital's access to ***its own email accounts***.  Thus, to GVA Capital's knowledge, Mr. Cherkashin is the only individual who has access to the email files holding key information relating to the Delaware Action, such that his compliance with GVA Capital's subpoenas is critical.

In this vein, the non-party discovery that GVA Capital seeks is limited to the entities and issues in dispute in the Delaware Action, and only in the direct possession and control of Mr. Cherkashin.  Indeed, Mr. Cherkashin's prior counsel previously agreed to produce documents responsive to the vast majority of GVA Capital's document requests and expressed a willingness to produce him for deposition.  Since Mr. Cherkashin's counsel has withdrawn, he is now completely ignoring GVA Capital's attempts to reach him.  Mr. Cherkashin cannot be permitted to ignore lawfully issued subpoenas, which have the effect of a Court order.

## II.   RELEVANT BACKGROUND

### A.   Overview of the Delaware action.

By way of background, in September 2016, Russian businessman Suleiman Kerimov and his family agreed to invest $20 million in GVA Auto.  Declaration of Rajiv Dharnidharka ("RD Decl.") Ex. 1 (GVA's Answ.) at 2.  Mr. Kerimov routed the investment through Prosperity Investments, LP ("Prosperity") and installed his nephew, Nariman Gadzhiev, as Prosperity's

1    director.  *Id.*  In turn, GVA Auto then invested the $20 million in Luminar Technologies, Inc.

2    ("Luminar").  *Id.*

3         Under the terms of the Luminar Technologies, Inc. SAFE (Simple Agreement for Future

4    Equity) agreement with GVA Auto, Luminar received $20 million from GVA Auto, and GVA Auto

5    ultimately received a number of shares of Luminar stock.  RD Decl. Ex. 2 (Definition's Compl.) at

6    ¶ 16.  Pursuant to the operating agreement of GVA Auto, members of GVA Auto would receive

7    back their invested capital and any additional gains would be distributed 90% to the member based

8    on its percentage interests and 10% would go to the manager, GVA Capital.  *Id.* at ¶¶ 18-21.

9         However, soon after the investment in Luminar was finalized, Prosperity's representatives

10   began to express concern with Luminar's prospects, and repeatedly asked that GVA Capital cause

11   GVA Auto to reduce its investment in Luminar.  RD Decl. Ex. 2, Answ. at 3.  GVA Capital and

12   Prosperity then entered into a Profit and Loss Agreement (the "PLA"), which eliminated the risk for

13   Prosperity by guaranteeing that Prosperity would receive back its initial investment in GVA Auto

14   (or whatever remained after sales to third parties), and in return, in the event that the Luminar shares

15   were sold at a profit, GVA Capital would receive the proceeds.  *Id.*  Mr. Gadzhiev went on to confirm

16   and describe the PLA in writing.  *Id.*

17        In early 2018, the U.S. Department of the Treasury designated Mr. Kerimov as "an official

18   of the Government of the Russian Federation" and placed him on its sanctions list, making it illegal

19   for him to do business or own assets in the United States.[1]  That same year, Mr. Kerimov and Mr.

20   Gadzhiev decided to move Prosperity's holdings—including its GVA Auto investment—into a trust

21   established for the benefit of Mr. Kerimov's children.  *Id.*  To do that, they purportedly transferred

22   the investment from Prosperity to a new entity, Definition.  *Id.*[2]

23

24   [1] *See, e.g.*, U.S. Dept. of the Treasury, *Treasury Designates Russian Oligarchs, Officials, and Entities in Response to Worldwide Malign Activity* (Apr. 6, 2018), available at

25   https://home.treasury.gov/news/press-releases/sm0338 ("He is alleged to have brought hundreds of millions of euros into France—transporting as much as 20 million euros at a time in suitcases, in

26   addition to conducting more conventional funds transfers—without reporting the money to French tax authorities.  Kerimov allegedly launders the funds through the purchase of villas.  Kerimov was

27   also accused of failing to pay 400 million euros in taxes related to villas.").

28   [2] Nevertheless, Definition takes the position that Mr. Kerimov does not have "*any* relationship *whatsoever* with Definition."  RD Decl. Ex. 3 at 4 n.2 (emphasis in the original).

In August 2020, Luminar announced that it planned to go public by merging with a special purpose acquisition company or "SPAC."  RD Decl. Ex. 1, Answ. at 3.  At the time, analysts estimated that Luminar would have a post-merger valuation of approximately $3.4 billion, which meant that GVA Auto's initial $20 million investment was suddenly worth approximately $200 million.  *Id.* at 4.  At the time of the filing of the answer to the complaint in the Delaware Action, Luminar had a market capitalization of $8.4 billion, and GVA Auto's stake was worth approximately $480 million.  *Id.*

GVA Capital continues to manage the GVA Auto investment.  In that capacity, GVA Capital has decision-making authority, including the "rights and powers" to "sell or otherwise dispose of" any of GVA Auto's assets at any time. *Id.*  The Luminar shares, however, were subject to a lockup restriction[3] that expired in early June 2021. *Id.*  On April 9, 2021, as the expiration date approached, GVA Capital wrote to Definition's managers at Neuberger Berman ("NB") to remind them that GVA and Prosperity had entered into an agreement, the PLA, regarding how any GVA Auto profits would be distributed.  *Id.*  GVA explained that, when the lockup expired, it intended to proceed according to the terms of the parties' PLA.  *Id.*

NB never responded to GVA Capital's letter.  *Id.*  Instead, Definition filed its complaint, suddenly seeking to unwind its predecessor's commitments, invalidate the PLA, and baselessly remove GVA Capital as the Manager of GVA Auto.  RD Decl. Ex. 2, Compl. at ¶ 59.  Definition denies that the parties ever entered into the PLA.  *Id.* at ¶ 39.

### B. Pavel Cherkashin is removed as Compliance Officer from GVA Capital, and in turn removes GVA's Capital's access to its own email accounts.

Pavel Cherkashin is a former director and compliance officer of GVA Capital.  Mr. Cherkashin was a director during the relevant time period until his removal on April 13, 2021.  *Id.* at ¶ 5.  The shareholders of GVA Capital have the unfettered authority to remove Mr. Cherkashin, but his removal was also justified by the fact that GVA Capital learned that Mr. Cherkashin

---

[3] A "lockup restriction" is a contractual provision that prevents investors from selling their stock for a designated period. *See, e.g.*, *Lee v. Pincus*, 2014 WL 6066108, at *1 (Del. Ch. Nov. 14, 2014).

concealed a financial transaction from GVA Capital, and that Mr. Cherkashin obtained his work visa by making material misrepresentations to the United States government.  RD Decl. Ex. 4.

On or around April 18, 2021, Mr. Cherkashin filed suit in the Cayman Islands, contesting his removal as a director of GVA Capital.  RD Decl. Ex. 5.  On or around that time, Mr. Cherkashin also removed GVA Capital's access to its own email accounts and servers.  RD Decl. Ex. 4.  Despite multiple requests from GVA Capital to restore GVA Capital's access to its own emails and servers, Mr. Cherkashin refused to restore access.  *Id*.

Mr. Cherkashin has denied that the parties entered into the PLA.  GVA Capital believes that Mr. Cherkashin was conspiring with Definition, and seeks discovery of, among other things, Mr. Cherkashin's communications with Definition.

**C.**   **Mr. Cherkashin feigns compliance with GVA Capital's subpoenas, but then his counsel withdraws, and he refuses to comply.**

GVA Capital served subpoenas on Mr. Cherkashin on December 9, 2021, seeking the production of documents and a deposition of Mr. Cherkashin, and Mr. Cherkashin's then-counsel accepted service.  RD Decl. Ex. 6.  On December 23, 2021, Mr. Cherkashin's counsel served responses and objections to the document subpoena from GVA Capital, and subsequently served amended responses and objections on February 10, 2022.  RD Decl. Ex. 7.  In the amended responses, Mr. Cherkashin agreed to search for and produce responsive records to each of the subpoena's document requests, with the exception of two requests.  *Id.*  Mr. Cherkashin's counsel also asked to meet and confer regarding the date and location of the deposition.  RD Decl. Ex. 6.

Months passed and Mr. Cherkashin failed to produce any documents or sit for a deposition despite multiple attempts to follow up by GVA Capital.  *Id.*  When GVA Capital's counsel again attempted to reach out to Mr. Cherkashin's counsel regarding the subpoenas, his previous counsel stated that her firm "no longer represents Mr. Cherkashin."  *Id.*  At the time, GVA Capital believed that Mr. Cherkashin had left the country, which would have complicated enforcing the subpoenas.

Recently, however, GVA Capital learned that Mr. Cherkashin is living in Los Altos, California.  RD Decl. ¶ 2.  On March 10, 2023, GVA Capital reached out to Mr. Cherkashin, offering

to meet to explain the scope or meaning of the document requests.[4]  GVA Capital informed Mr. Cherkashin that if he did not confirm his compliance by March 17, 2023, GVA Capital would be forced to file a motion to compel his compliance with the subpoenas.  RD Decl. Ex. 8.  Mr. Cherkashin never responded.  On March 21, 2023, GVA Capital sent another follow up email to Mr. Cherkashin, which he again ignored.  *Id.*  GVA Capital is thus forced to bring this motion to compel.

## III.   ARGUMENT

### A.   Legal Standard.

Under Rule 45, a party may seek discovery from non-parties, and the permissible scope of that discovery is the same as the permissible scope under Rule 26.  *See In re Samsung Elecs. Co.*, 2022 WL 425579, at *1 (N.D. Cal. Feb. 11, 2022); *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 680 (N.D. Cal. 2006).  The scope of permissible discovery under Rule 26 of the Federal Rules of Civil Procedure is broad.  *Republic of Ecuador v. Mackay*, 742 F.3d 860, 866 (9th Cir. 2014) (citation omitted).  "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  A determination of proportionality is made "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  *Id*.

On a motion to compel discovery, "[o]nce the moving party establishes that the information requested is within the scope of permissible discovery, the burden shifts to the party opposing discovery" to establish why the discovery should not be permitted.  *Khalilpour v. CELLCO P'ship*, 2010 WL 1267749, at *1 (N.D. Cal. Apr. 1, 2010); *SanDisk Corp. v. Round Rock Rsch. LLC*, 2014 WL 691565, at *1 (N.D. Cal. Feb. 21, 2014).

### B.   GVA Capital's Motion is Properly Filed in This District.

As a preliminary matter, GVA Capital's motion to compel is properly filed in the Northern

---

[4] As far as GVA Capital is aware, Mr. Cherkashin still does not have counsel.

District of California because San Francisco is the place where compliance is required on the face of the subpoena, and the place where compliance with the subpoena will actually occur.  *See* Fed. R. Civ. P. 45(c); *Uniloc USA, Inc. v. Apple, Inc.*, 2020 WL 6262349, *2 (N.D. Cal. Oct. 23, 2020) (concluding under Rule 45(d) nonparty motion to compel depositions were properly filed in district where compliance was required on face of subpoena); *see also HI.Q, Inc., v. ZeetoGroup, LLC*, 2022 WL 17345784, at *10 (S.D. Cal., Nov. 29, 2022) (finding motion to compel nonparty for deposition properly filed where compliance with subpoena will actually occur).

Both the deposition subpoena and the subpoena duces tecum provide that the location of compliance is at Keker, Van Nest & Peters LLP, 633 Battery Street, San Francisco CA 94111.[5]  RD Decl. Exs. 9, 10.  Rule 45 limits issuance of a subpoena for production of documents to "within 100 miles of where the person resides, is employed, or regularly transacts business in person."  Fed. R. Civ. P. 45(c)(2).  Similarly, deposition testimony must be commanded to occur to "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A).  Here, the location for compliance is approximately 41 miles from Mr. Cherkashin's known address in Los Altos, California.  Thus, the subpoenas comply with Rule 45's 100-mile limitation and this Court is the proper venue to enforce that compliance.

## C.   GVA Capital's Subpoena Duces Tecum Seeks Relevant and Proportional Documents.

GVA Capital's subpoena seeks documents that are directly relevant to the issues in dispute and proportional to the needs of the case.

As to relevance, the categories of documents GVA Capital seeks are directly relevant to the issues in dispute in the Delaware action.  These categories of documents include documents and information related to GVA Capital, GVA Auto, Luminar Technologies, Startup Temple (an affiliate of GVA Capital), Vestor.In (same), Definition, and Prosperity (*see*, *e.g.*, Requests 1, 2, 3, 4, 5, 6, 7, 8, 9), which form the entire basis of the Delaware Action.  Essentially conceding the relevance of

---

[5] DLA Piper recently substituted into the Delaware action for GVA Capital.  DLA Piper, however, has both San Francisco and Palo Alto office locations, and would be willing to facilitate whichever location is most convenient for Mr. Cherkashin.  Indeed, DLA Piper's Palo Alto office location is only 7.5 miles from Los Altos, CA.

these requests before withdrawing, Mr. Cherkashin's former counsel **agreed to produce non-privileged documents responsive to each of these requests**.  RD Decl. Ex. 7.  Similarly, Request 10 seeks documents and communications relating to the PLA, which is an agreement that bears directly on the parties' claims and defenses in the Delaware action.  Again, Mr. Cherkashin's former counsel agreed to produce non-privileged documents responsive to this request before withdrawing.  *Id.*

Request 11 seeks non-privileged documents and information relating to the Cayman Island's litigation.  The Cayman Island's litigation is directly relevant because it bears on the veracity of Mr. Cherkashin's removal from GVA Capital for concealing a financial transaction from GVA Capital and obtaining his work visa by making material misrepresentations to the United States government.  Mr. Cherkashin's former counsel agreed to produce non-privileged documents responsive to this request, too.  *Id.*  Similarly, Request 12 seeks his communications with the United States Citizenship and Immigration Services relating to his work visa and application.  Again, given that Mr. Cherkashin was removed for making material misrepresentations in connection with his application, these communications are directly relevant.

Request 13 seeks copies of any backup tapes of any GVA Capital documents that Mr. Cherkashin controls.  And Request 14 seeks documents sufficient to identify individuals who controlled or had administrator privileges over GVA Capital email accounts.  These Requests are directly relevant, and highly important from a discovery process perspective, because Mr. Cherkashin—without authorization—completely cut off GVA Capital's access to its own email accounts.

As to proportionality, the Requests seek a finite amount of information with respect to a few discrete issues pertinent to the Delaware Action and Mr. Cherkashin's role therein.  Accordingly, the Rule 26(b)(1) proportionality factors all weigh in favor of GVA Capital.  First, "the issues at stake in the action" and the "importance of the discovery in resolving th[ose] issues" are significant.  Fed. R. Civ. P. 26(b)(1).  In this same vein, the amount of controversy is also significant.  Without rehashing the full background set forth herein, GVA Auto made a substantial, $20 million investment in Luminar.  That investment was overlayed with the terms of the Profit and Loss Agreement, under which GVA Capital faced an even greater financial risk by guaranteeing that

Prosperity would receive back its initial investment in GVA Auto. Once Luminar became profitable and GVA Capital told Definition that it intended to proceed according to the terms of the PLA, Definition filed its Complaint seeking, among other things, to invalidate the PLA. GVA Auto's now-disputed investment is worth tens of millions of dollars in addition to the $20 million initial investment. Discovery is, therefore, necessary to determine the proper distribution of those substantial profits.

Second, GVA Capital is largely seeking documents and information that could only be in Mr. Cherkashin's possession. Again, his communications with the various entities mentioned herein are key to fully understanding his role. Not only is there no guarantee that GVA Capital can obtain that same information from the counterparties to those communications, but GVA Capital also does not have the benefit of hindsight to determine whether it is able to collect the same information from some other source. This is a bedrock principle of discovery that parties, like GVA Capital, do not know what they do not know. Tellingly, Definition subpoenaed Mr. Cherkashin around the same time requesting similar categories of documents, meaning he likely possesses relevant documents not in the possession of some other more accessible source.

Finally, the burden on Mr. Cherkashin is minimal, and once the relevance of the requested discovery is established, as GVA Capital has done here, the burden is on Mr. Cherkashin to demonstrate an undue burden or expense. He has not done so. To the extent there is any burden at all, that burden is greatly outweighed by the benefit and importance to GVA Capital and its claims.

**D.      Mr. Cherkashin's Refusal to Sit for a Deposition is Improper.**

Mr. Cherkashin's refusal to sit for a deposition has no basis in law or fact. While a nonparty may challenge a subpoena duces tecum via written objection, a deposition subpoena may only be challenged by moving to quash or modify the subpoena pursuant to Federal Rule of Civil Procedure 45(c)(3)(A), or by moving for a protective order pursuant to Rule 26(c). *See* 9 James Wm. Moore, *Moore's Federal Practice* § 45.30 (2007) ("The written objection procedure is available only for a subpoena commanding production or inspection . . . "); *BNSF Ry. Co. v. Alere, Inc.*, 2018 WL 2267144, at *7 (S.D. Cal. May 17, 2018) (explaining that proper method for nonparty to seek court's assistance after being served with subpoena to testify at deposition is to file motion to quash or

modify subpoena).

Here, Mr. Cherkashin never filed a motion to quash or otherwise sought a protective order. In fact, before withdrawing, Mr. Cherkashin's former counsel indicated they wanted to meet and confer on the time and place of the deposition.  RD Decl. Ex. 6.  GVA Capital remains willing to do so, but Mr. Cherkashin cannot be permitted to continue flouting a lawfully issued subpoena, which has the same effect as a court order.  *Pennwalt Corp. v. Durand-Wayland, Inc*., 708 F.2d 492, 494 n.1 (9th Cir. 1983) (observing that subpoena "is itself a court order.").  This Court should order that he comply with the deposition subpoena.

## IV.   **CONCLUSION**

Mr. Cherkashin cannot be permitted to ignore lawfully issued subpoenas, which have the same force and effect of a Court order.  Further, the subpoenas seek information that is directly relevant and proportional to the needs of the case.  Mr. Cherkashin's compliance is particularly urgent because he has cut off GVA Capital's access to its own email system, which contains information critical to GVA Capital's defenses in the Delaware Action.  GVA Capital thus requests that Mr. Cherkashin be ordered to comply with subpoenas in full.

Dated:  May 3, 2023

DLA PIPER LLP (US)

By:  */s/ Rajiv Dharnidharka*
Rajiv Dharnidharka
Attorneys for Petitioner
GVA Capital Ltd.